Case No. 15-7120. K.P. by her next friends and parents at Elk Appellate v. District of Columbia. Mr. Nabors for the appellant. Mr. Love for the athlete. Good morning. Good morning, Your Honor. Stevie Nabors on behalf of the appellants. I'd like to reserve two minutes for rebuttal. Okay. In June of 2015, an IDEA hearing officer found that the District of Columbia denied K.P. a fate by forcing her into an inappropriate educational placement that could not meet her needs. The hearing officer ordered remedial action, but the district refused to comply with that order and instead returned K.P. to that inappropriate placement where she has remained for the last 14 months. This court should find that K.P. is protected by statehood and entitled to a placement that can meet her needs during the pendency of her open actions in district court. The IDEA's statehood provision is intended to strip school districts of the unilateral authority to deny disabled students appropriate placements during the pendency of their appeals. I guess I'm surprised that this case hasn't moved along in the district court to final judgment. What's going on on that front? It stayed pending the outcome of this appeal, Your Honor. And that was done by the district court? Yes, Your Honor. But the district court has, as I understand it, correct me if I'm wrong, discretion to keep moving forward on the merits while the state put this litigated on appeal? It can, Your Honor, but it will not. And the reason why is the district court said that it does not have jurisdiction to hear the appeal portion. There's an enforcement portion and an appeal portion. It says it can't hear either, but it won't hear the appeal portion because of the discretionary ripeness doctrine. Right. Okay. Well, that's just my, I guess, angst, which has nothing to do with the legal positions that this case hasn't moved along to a final resolution. But in any event, we've got to resolve the issue that we have. Are you still, is your client still asking for, if DCPS said we will reconstitute the program that KP was in in 2014 before the disputed shift, your client is still asking for that, no? We would take it in a heartbeat, Your Honor. Okay. That goes to the fundamental issue here. We're not actually asking for a non-public school or a private school. We're asking for that appropriate placement. Was that program that you're warning to have in existence, was it ever outlined in an IEP that we could say should stay put? No, Your Honor, it was not. It does not make it impossible or at least difficult to enter a stay put order if you don't have an IEP to stay put with. No, Your Honor, it's not. And the reason why is that an IEP is just a written document. It's just a piece of paper. And the IDEA mandates that that piece of paper describe what the placement is. Placement and IEP are two different things. Thankfully, the IDEA hearing officer applied her specialized knowledge and expertise of special education and educational policy to outline exactly what components comprise the pre-October placement. That is all of those details that should have been on that IEP but were not. Now, did your client and DCPS agree before the shift occurred in 2014 that the placement she was in was an appropriate placement? Yes, Your Honor, and the hearing officer also found that. Exactly. So the parties agree and the hearing officer found that that placement was appropriate. Yes, ma'am. The IEP is not in conflict with that but doesn't adequately specify or require it. That's your client's position. Well, that's the hearing officer's position and that the lack of that information further denies KP of faith. And that's your position before us? Yes, Your Honor. So what if there were a truly astounding educational program that, let's say, some philanthropist offered. I'm going to try to eliminate the problems for children with disabilities in DC and I'm going to give basically every kid everything they need. And DCPS says that's fantastic and they accept that for a year and the city thinks that's great, the parents think that's great, the hearing officer thinks that's great, but then the philanthropist pulls out. Under the rule you advocate, what would prevent in that situation a stay put from requiring DCPS to fund what the philanthropist used to fund? In the scenario you've described, Your Honor, the placement wouldn't be pursuant to the IDEA. The IDEA only requires that a student receive educational benefit from their placement. Even if the district said, we think that's fantastic. And you know what, now you're going to be a straight-A student in college. That's not an IDEA placement. So that's a little bit metaphysical for my taste because the stay put, as you've argued, the analysis of the placement for purposes of the stay put has to precede any kind of merits adjudication of what the IDEA ultimately requires. So we have to have some benchmark that is somewhat distinct from what the IDEA ultimately has found in the circumstances to require. Al? You're right, Your Honor. That's how we get some of those decisions like Oliver Vineyard-Wendish, where the student actually isn't in a fake placement, but they're in a placement that a hearing officer has found was appropriate under the Act. Those are reimbursements under Florence County School System v. Carter, a Supreme Court case. But the hypothetical that you propose, Your Honor, we're not saying that at any point in time that KP is in a perfect placement, that that's going to be the stay put placement. What we had in this particular case is that she was inside of a public high school, and she had a program that was working for her. Now we know that the district has fully eliminated that program, and the next best option was expressly rejected by the hearing officer because it cannot meet her needs, despite that fact. And she's still in that program. Exactly, Your Honor. And there's nothing in the record telling us how she's doing in that program today. It's just the nature of the litigation context, right? That's right, Your Honor. But if the court would like a supplemental pleading, I'd be happy to update the court. I have some details now if you'd like them. It's up to Judge Pillard whether we want them now. But happy to have the supplemental pleading. Yes, Your Honor. I'm not sure. Well, keep going. We'll hear what the district says about the supplemental pleading. Let me ask you this. This is related. If we were to find that the hearing officer's description of the placement were inadequately specific, which I gather is what the district court and the magistrate judge thought, to form a basis for a leap, would it be appropriate for us to remand to the district court to conduct an evidentiary hearing to determine the characteristics of that pre-October 2014 placement? Absolutely, Your Honor. Because the other option is to keep KP in a placement that a hearing officer has already said cannot meet her needs, will not ever provide her a favor. And she's going to have to stay there until we can resolve the issue on appeal. That certainly contravenes the purposes of the IDEA indefinitely. Stay put. My goal is to expedite this thing to final conclusion. This is an off-ramp that will be very temporary, I assume, because the district court, let's say you win this appeal, the district court presumably is going to resolve the merits very quickly. No, Your Honor. Why? There's a question of whether or not parents can enforce an HOD. That was before the court in BD. There's an open question about that. That hasn't even been briefed yet. And that's one of the reasons why statehood. You're seeking to the extent, and correct me if I'm wrong, to the extent you were saying that a public education wasn't good enough, that issue will be resolved. No, Your Honor. I would frame it as saying that the district's – Didn't you have multiple claims? We did, Your Honor. One of them was that no public school setting was good enough, correct? That's right, Your Honor. The district court's going to have to resolve that, correct? Yes, Your Honor. Okay. That can be resolved very quickly. I hope so, Your Honor. And then, so once that's resolved, that part of the case is over, and then there will be the separate issue on the 1983 to enforce the hearing officer determination. If the district court says you can't do that, then that also ends the case, correct? Until it comes here, Your Honor. And then we would argue that even though this court has previously held an Anderson by Anderson, that stay put does not apply to appeals here, that recent decisions and the updated CFR that the Department of Education have issued would give this court a great reason to revisit Anderson and determine whether or not – Well, I assume we're not going to revisit a case. What is the language of the stay put provision does not suggest you would be able to stay put in the circumstance that I described, would it? The statute is unclear. The regulations says they're in dependency of all administrative and judicial proceedings. And it was based on that that the Third Circuit in MR versus Ridley School District held that stay put applies in all appeals, even up to the Supreme Court. Okay. So then your point is even if it's resolved quickly, then that will be appealed and the stay put would still apply during that appeal. Yes, Your Honor. I see. So the hope of quick resolution seems aspirational at best. Mr. Avers, what's your position on the enforcement of the favorable HOD? You seem to concede that the HOD was favorable on page 7 of your brief. It was favorable to you and also had the unfavorable aspect, which was declining to order private placement. How do you tell me your position on why the bar against appealing or enforcing an unfavorable HOD is not a bar against the relief you're seeking here? Your Honor, it's only a partially favorable HOD. And very recently Judge Sullivan in Windisch versus District of Columbia allowed an appeal to go through that was just a partial appeal of an HOD. It's happened repeatedly throughout both cases in this district and other districts as well. And I think the reason why is just a matter of equity. If the hearing officer commits a plain error like we think that she did in this and it would bar the student from receiving a FAPE otherwise, the purposes of the IDEA are not served by saying, well, I mean, you kind of won, but sorry, the student's still not going to get a FAPE, even though you pretty much proved your case. And what's your position on the adequacy or not of the state administrative avenue? Not only that it's inadequate, particularly in this case due to the facts, but that parents are not required to re-exhaust or to engage in a secondary exhaustion through the state complaint process. The Department of Justice articulated that position in its brief in the Ninth Circuit case regarding enforcement of the HOD, and it argued quite vociferously that parents don't have to use state complaints, but state complaints are optional. And that Ninth Circuit case that you're referring to is the KD Hawaii case? No, Your Honor. I'm sorry, it's actually in our pleadings that's before the district court. I apologize. I see that I'm out of time, Your Honor. Okay, we'll give you some time for rebuttal. Thank you. Thank you, Your Honor. Good morning. May it please the Court, Richard Love for the District of Columbia. Appellants mistakenly rely on IDEA's state provision to obtain what no IEP has provided and no hearing officer of court has ordered. Indeed, they both appeal the hearing officer's decision because they didn't order the placement that they desire, and they ask this court to issue a state put order based on a patchwork of statements and findings in that same hearing officer's decision. The magistrate judge I would submit correctly found that this approach is not supported by case authority. The then current placement, though, was a, and I'm going to paraphrase, was a smaller classroom setting with people with the same disability, whereas the newer placement, and again, using that term loosely here, the newer placement was a larger classroom with more students with multiple disabilities. No, I would respectfully disagree. You know, unquestionably the classroom setting changed, as you described, but I don't think there's any IEP or hearing officer decision that established the current, that classroom setting as her then current educational placement. That's the problem with this case. When you compare this case to the cases that the plaintiffs identified in their reply brief, in every single one of those cases there was a hearing officer decision that identified the placement, in fact, ordered the placement. They all were private school placements, ordered the placement, and ordered the district to fund those placements. I mean, they were unquestionably established as the current educational placement because case law has identified that hearing officer decision as an agreement. But Mr. Love, this is a strange position for the city to be taking. So there are many cases in which a hearing officer, a family asked for and a hearing officer ordered private placement. In this case, both the hearing officer and the family are actually more willing to work with the city or more willing to believe that the city has something reasonable to offer, presumably at lower cost if general experience is any guide. And because that was the case, this student is in worse shape than someone who a hearing officer said, we're just giving up on the public school and sending you to private school. So here they're saying, we do want to be within the public school. We are willing to accept the placement that was working for our daughter in the public school. And that puts them in a situation where there's no state put that's going to work for this child? Well, I think the record shows that actually twice they asked the hearing officer for a private school placement, both in 2013 and both in 2015. And both hearing officers denied that request. And in 2014, the hearing officer opinion says the public school placement was working for her and the parents thought it was too. So the only thing that's, I mean, the most efficient thing for the district in terms of providing education for this child, the most efficient within the system is off the table for state put purposes, in your view? Well, I think that the DCPS did not refuse the hearing officer's order to convene an IEP team and develop a new IEP. That IEP was developed and DCPS made the decision that the services that it called for could be provided in the post-October 2014 placement. And the hearing officer disagreed? Yes, it was slightly larger. Yes, there is more interaction with non-disabled students and the composition may be a little different. But didn't you, Mr. Love, lose that issue before the hearing officer? Didn't the city lose that? Yes, and we do not dispute. We recognize the plaintiff has a right to litigate her entitlement to a placement, but absent an IEP that requires, or an HOD that orders the placement she seeks through state put, it shouldn't be ordered at the outset of litigation. But that is the whole point of state put, is apart from, I mean, for example, the rule, so maybe this is a way of sharpening it, the rule that you are proposing would give great incentive to schools to write IEPs in very general terms that would not specify the critical features that are both costly to the school and helpful to the student. And that way, the IEP would not be a basis for a state put. What's your response to that? Well, Sarah, one, the parent and the student always have the option to challenge that IEP as insufficiently descriptive. Which they did, but we're talking about the state put, the congressional purpose of which is to say, children's school years are fleeting and critically important. We need to have a baseline educational situation for this child while the family litigates. Well, the flip side is, as we've pointed out, and I think your question initially to counsel also raised the concern, and that is whether it's a great disincentive to any school district to offer anything that goes beyond the strict terms of an IEP for the fear that they will be required to maintain those services through state put throughout any judicial proceeding. I mean, in this case, the problem is, you know, when it's not specified in an IEP, it's not ordered by an HOD, the district had no opportunity to even challenge, they didn't have the opportunity to challenge statements or findings in the HOD. They will in the litigation, same answer that you're giving to the other side, that you're saying should satisfy them. You will have every, this is just the interim situation. It's not the ultimate situation. D.C. has its full prerogative to litigate these questions to the end of the case. Right, and the district as an institution is faced with state put requests of all kinds and all manners. And without, to be able to administer that state put, I think you need some clarity. This is a very powerful provision. Dispenses with the normal injunction standards. And so it was meant to, and when you look at, like, Honick v. Dole, you know, KP wasn't excluded from school. She wasn't expelled. She wasn't subject to an indefinite suspension. She was moved to a slightly larger program. And mainstreaming, indeed, is a priority, not to the detriment of a child. Right. The less restrictive, but we all know, and you know this better probably than many people in this room, that when a child has the kind of disabilities that many of these children have, that pushing them a little too far, a little too fast into a very overstimulating environment, into an environment where they don't have continuity, into an environment where they're frightened, it's extremely disruptive. And it is as bad, if not worse, than expelling them. So it's, I mean, I understand absolutely the difficulty institutionally for the district. We're just trying to make sense of the statutory feature and your position on it. Well, I would suggest that, you know, particularly given the powerful nature of this provision, it should be strictly applied. And our position is that, you know. I'm not going to stop you there. I'm not sure the logic of that. It's powerful, why don't we just apply it moderately, neither leniently nor strictly. I don't understand strictly applied. I think to construe the current educational placement from statements or findings in an HOD, particularly an HOD that neither ordered these services, neither ordered the maintenance of this student in this program, and in fact denied placement in a similar private setting, is inconsistent with the state provision itself. It makes the application extremely difficult to administer because of the vagaries. Consistent with my questions to your opposing counsel, how quickly can this get resolved? Because this is taking too long. And part of that's our court's fault, I think, for getting here. We definitely agree with your concern. We did not ask the court to rule on rightness and to deny the estate put on that basis. So we made similar arguments, I think, to what I'm making now. I believe the merits can and should be addressed. I don't know why the question of the enforceability of a favorable HOD, I mean, they're two very separate issues here. Not really so separate. They want the public placement that both parties agreed was an adequate placement, and they only want private school if they can't get that. So they did not get private school, so they're appealing because they don't have a FAPE. And it seems to me the two issues are very intertwined. The notion that they're appealing a favorable HOD seems a little fictional. When the HOD said no to private placement and the adequate placement is the pre-October 2014. Nobody challenged. One, I don't agree that there was an agreement to the classroom setting that was the pre-October 2014. Don't you agree with that? Well, there was no agreement to that. Well, you were providing it and they were accepting it. And then the hearing officer said it was adequate, and you did not appeal that aspect. Well, we couldn't appeal that. That was not a part of the order. That was a statement and a finding in the hearing officer's decision. We had no necessity to appeal from an order that required a new IEP to address specific issues, which were done. But we don't challenge the jurisdiction of the court to address the contention that the hearing officer aired in finding that a private school placement was not the least restrictive environment. That certainly can perceive the court as jurisdiction to address it. The district court found it wasn't right because it was tied up with issues in terms of enforceability. But I think given the time that has passed, there's no reason the court can't make a determination as to whether the hearing officer aired. So your view, just let me clarify what's before us and what's not. The stay put is what's before us. That's all that's before us. And your view is that what she gets as a stay put is what the district wants to give her. No, I'm saying that she has failed to satisfy her burden to determine her then current educational placement because they've identified no IEP that has required it. Because the district brought a very general one, okay, the no IEP. And what else? No IEP that required it or HOD or court that ordered it. But I was trying to get to Judge Kavanaugh's question in terms of the merits. I believe the case can proceed quickly to address the merits. But also, there's no reason. I disagree with the end of, I think it's towards the end of the appellant's reply brief, that there's somehow collaterally a stop from attacking her current placement. There was a 2015 IEP. It's a part of this record. They could have filed a new due process challenge to that 2015 IEP. There's a 2016 IEP, and they could have challenged that as well. So I think there were a variety of mechanisms to get this case moving. But nonetheless, we certainly do not advocate slowing this down. There's no, you know, we certainly... In your view, what will happen if you win this? What's going to happen in the district court, and how quickly can that happen? I think it should be, you know, remanded for the court to address the merits issue. And that is, you know, whether or not, you know, the least restrictive environment issue, which is tied up with this classroom setting. And, you know, as I said, we didn't advocate the ripeness issue before the district court, and we haven't defended it here. So I think it should go back. And if you were to lose here on the state put the same, really, you think the merits can be quickly resolved? That's right. Unless the court has further questions, though, we would... Does state put apply pending appeal, in your view? No, I think that the court has ruled on that. And in this court? Well, I mean, if there's a pending action, which there is here in the district court, then it surely applies. That distinguishes this case from Anderson, no? No, I think my memory of reading it is that it would not apply. It only applies through the district court proceeding, not through the... if there's a subsequent appeal. But this is not a subsequent appeal. There's no determination on the merits. If the district court rules against the family, then they don't continue to get their state put while they appeal. But that's not this case. Right. Right. That's not this case. Yeah, but you're saying if it went back and you won on the merits, the state put wouldn't apply through that appeal of the merits. That's what Anderson says. Right, okay. Yeah, just to clarify that, yeah. Just making sure. Okay, and that's it. Thank you. Thank you, Honors. I just want to touch on one point that the district articulated, and that is that KP's IEP is the only service that she requires, or I think Mr. Love framed it as state put would require or have a chilling effect on schools from providing extra services that are not on the IEP. The problem with that argument is that the hearing officer said that those services were necessary to receive a FAPE, and that's why they should have been on the IEP. Granting state put in this case and saying that, yeah, KP should receive all of those services wouldn't have a chilling effect. It's just correcting what the district should have done in the first place, which is to write an IEP that accurately reflected KP's then current placement. The court doesn't have any further questions. Okay. Thank you both. The case is submitted.
judges: Kavanaugh, Pillard, Sentelle